UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

United States of America,                         03-CR-0129
                              Plaintiff,          (CPS)

      - against -

Howard Thomas Porter,                             MEMORANDUM
                                                  OPINION & ORDER

                              Defendant.

----------------------------------------X

SIFTON, Senior Judge.

On October 16, 2003, Howard Thomas Porter ("Porter") was convicted by a jury on three counts of transporting and shipping child pornography in interstate commerce by computer, in violation of 18 U.S.C. § 2252A(a)(1) and seven counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). On May 26, 2004, Porter was sentenced by the undersigned to 4 years imprisonment on each count to be served concurrently and 3 years supervised release on each count to be served concurrently. On November 1, 2006, following a Second Circuit appeal and remand, Porter was sentenced to the same period of imprisonment and supervised release. On August 31, 2007, Porter began his period of supervised release. On October 23, 2007, the United States Probation Department ("Probation Department") petitioned for the revocation of Porter's supervised release. Presently before this court is the issue of Porter's detention pending the revocation hearing. For the reasons set

forth stated and the findings of fact set forth below, Porter is ordered to be detained pending the hearing on his alleged violation of the conditions of supervised release.

## BACKGROUND

The following facts are drawn from the parties' submissions, the October 29, 2007 proceeding, the November 1, 2007 hearing, and from the record of the prior proceedings before the undersigned.

Between October 7, 2002 and December 2002, an undercover detective from the Wichita, Kansas Police Department, posing as the mother of a four-year-old daughter in Wichita, entered a chat room believed to be frequented by individuals interested in exchanging child pornography or engaging in sexual activities with children. Porter made initial contact with the detective, and several chat sessions ensued in which Porter discussed the possibility of engaging in sexual activity with the four-year-old daughter. Porter also sent the detective e-mail messages with attached images of child pornography. Law enforcement officers obtained a warrant to arrest Porter and search his , which was executed on January 9, 2003. Among the evidence seized were computer materials containing images of child pornography and ten photographs of children, including Porter's son.

Porter was arraigned on January 9, 2003, and signed an unsecured bond in the amount of $150,000 in which he agreed to

the conditions of pretrial release set by Magistrate Judge
Azrack.  These conditions included restriction of travel to New
Jersey and New York City, surrender of his passport, weekly in-
person reports to and random visits by the Pretrial Services
Agency, evaluation and treatment for possible mental health
problems, forbearance from unsupervised contact with children,
and a ban on all Internet use.  On January 28, 2003, Magistrate
Judge Mann imposed the additional conditions of drug and alcohol
testing and treatment as well as the immediate cessation of
employment or volunteer work for the National Coalition for Civil
Rights.

On January 30, 2003, Porter was indicted on three counts of
transporting child pornography through interstate commerce.  The
indictment was superseded by a fourteen count indictment on April
23, 2003, charging Porter with three counts of transporting and
shipping child pornography in interstate commerce by computer in
violation of 18 U.S.C. §§ 2252A(a)(1), 2252A(b)(1), and 3551 et
seq., and eleven counts of possession of child pornography in
violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 3551
et seq.

In accordance with the conditions of his pretrial release,
Porter was evaluated at the New York Center for Neuropsychology
and Forensic Behavioral Science.  The evaluation revealed that
> defendant's primary sexual interest is in adolescent
> females...he endorsed items which reflect justification

>     for pedophilic behavior, the types of rationalization
>     and/or excuses used frequently by individuals who are
>     sexually involved with children...he attempts to
>     present himself in a socially desirable light...Mr.
>     Porter is either unwilling to openly discuss his
>     offending behavior, and/or, lacks substantial insight
>     into the nature of the same.

Mem. From Melissa A. Roman, United States Pretrial Services Officer, Apr. 3, 2003, at 1-2 (internal quotation marks omitted). The treating facility determined that Porter was "in need of individual therapy to: monitor his mental status over time; and, to confront his distorted thinking, and gain insight into his offending behavior." *Id.* at 1. Porter refused to participate in treatment. While on pretrial release, Porter was also reportedly failed to attend a pre-trial services appointment, report a change in employment, and be present for a scheduled home visit.

Trial by jury commenced on October 7, 2003, and on the government's motion, one count of possession of child pornography was dismissed. On October 16, 2003, the jury acquitted Porter on three counts of possession, found Porter guilty on the remaining seven counts of possession, and found Porter guilty on all three counts of transportation. Porter remained on conditional release following the verdict.

At the time of Porter's sentencing, Porter's criminal history was described as consisting of several arrests; a conviction in 1987 for battery on a Florida law enforcement officer and disorderly conduct resulting in a sentence of three

years of probation; 1993 guilty plea of disorderly conduct in Putnam Valley, New York after being arrested for criminal contempt; and a Staten Island arrest and arraignment for driving while intoxicated, which occurred during Porter's conditional release pending sentencing. In addition, Porter's son was removed from his custody by the Administration for Children's Services on neglect charges in 2003, with custody eventually being transferred to his son's great-aunt. Porter also presented a history of alcohol abuse.

On March 10, 2004, the government moved for Porter's remand which the Court granted, based on Porter's violation of the conditions of his release. The motion was filed because (1) Porter was twice seen at a public library by Administration for Children's Services workers, each time on internet chatrooms, in direct violation of the terms of his release which stated that he was not to use the internet, and (2) he failed to report the driving while intoxicated arrest as required.

At his sentencing on May 15, 2004, Porter moved for bail pending appeal. The court denied the motion finding Porter to be a danger to the community. On July 20, 2005, Porter again moved for release pending appeal, claiming that he had demonstrated a substantial likelihood of reversal on the seven possession counts, which would reduce his sentence, and that he was not a danger to the community or a flight risk. The motion was denied

on September 15, 2005.

Porter appealed his conviction and sentence to the Second Circuit. On June 5, 2006, the Second Circuit affirmed the conviction but remanded to the undersigned for sentencing, under *United States v. Fagans*, 406 F.3d 138 (2d Cir. 2005). *Porter v. U.S.*, 184 Fed. Appx. 112, 115 (2d Cir. 2005). In June 2006, Porter moved for release pending resentencing which the court denied in October 2006. On November 1, 2006, Porter was resentenced to 4 years imprisonment and 3 years supervised release. Porter appealed the November 1, 2006 sentence to the Second Circuit.

On February 22, 2007, Porter filed a motion for bail pending appeal. On April 5, 2007, Porter's motion was denied, because (1) Porter had not demonstrated a likelihood of success on appeal or a substantial issue of law or fact likely to result in a reduced sentence to less than the time he would have served when the appeals process was likely to be completed; and (2) Porter had not demonstrated that the danger which he presented to the community would be significantly reduced or eliminated in the time left on his sentence by medical or correctional treatment outside the prison system.

Porter also filed a Writ of Certiorari to the United States Supreme Court, which was denied on April 30, 2007. *Porter v. U.S.*, 127 S.Ct. 2149 (2007). On July 20, 2007, the Second

Circuit affirmed the sentence. *U.S. v. Porter*, 2007 WL 2090147 (2d Cir. 2007).

On July 30, 2007 Porter filed a *pro se* motion to vacate judgment pursuant to Federal Rule of Civil Procedure 60(b)(6) based on the court's rulings with respect to discovery issues with his October 2003 trial. The government submitted its response on October 26, 2007 and the motion is currently pending on submission.

On August 16, 2007, Porter filed a *pro se* motion for injunctive and declaratory relief from the requirements of the Sex Offender Notification and Registration Act ("SORNA") and modification of supervised release. Specifically, Porter sought (1) to enjoin his registration under SORNA claiming that the statute violates the ex post facto clause of the Constitution; (2) access to Richmond and Kings County because of pending legal actions, as well as the state of New Jersey where his son resides; and (3) suspension of mandatory drug testing. That motion is returnable on November 6, 2007.

On August 31, 2007, Porter began his three year sentence of supervised release. The following special conditions of supervised release were imposed in addition to the District's standard conditions of release:[1] (1) follow the directions of the

---

[1] The standard conditions of supervised release include: (1) restrictions on travel; (2) mandatory reports to the probation officer; (3) compliance with probation officer instructions; (4) support to dependents; (5)

Probation Department with respect to psychiatric and (2) substance abuse treatment; (3) not use any computer or Internet connection for the purposes of gaining access to child pornography; and (4) submit to monitoring, directly or electronically, of any personal computer, in order to assure compliance with condition (3).

On September 5, 2007, Porter made an emergency motion for modification of supervised release seeking relocation to a friend's house in Bronx, New York based on his family's move from Staten Island, New York to Texas. On September 7, 2007, the Probation Department moved for a modification of the conditions of Porter's supervised release, relocating him to a Residential Re-Entry Center (RRC) for a period of 180 days, or until he found a stable residence, which was ordered by the undersigned on September 17, 2007, after Porter waived his right to a hearing and the assistance of counsel.

On September 28, 2007, the Probation Department requested a hearing on the condition that Porter participate in a mental health treatment program, contribute to the cost of such services or any psychotropic medications prescribed, and undergo a polygraph examination as part of the treatment. The Probation Department also moved for a modification of the conditions of Porter's supervised release to include computer and Internet

---

regular work at a lawful occupation; (6) informing the probation officer of changes in residence or employment; and (7) alcohol and drug restrictions.

monitoring and the requirement of random searches, which was ordered by the undersigned on October 1, 2007, after Porter's waiver of his right to a hearing and the assistance of counsel.

On October 2, 2007, Porter submitted a renewed application for permission to relocate to a friend's home, in Bronx, New York. On October 4, 2007, the undersigned denied Porter's application and ordered the defendant, the Probation Department, the government and assigned counsel to appear before the undersigned on October 18, 2007 for a status conference to address the outstanding modifications of release sought by Porter and the Probation Department.

On October 17, 2007, the Probation Department submitted a memorandum to the Court outlining Porter's non-compliance with the RRC's rules and Probation Department's directives. Porter admits his failure to comply with the RRC rules on several of the below described occasions and provides explanations for his actions. The list of violations includes:

On October 3, 2007, Porter failed to report for a required sex offender treatment appointment, which Porter admits, but states that he had a job interview and had to go to public assistance that same day. On October 4, 2007, Porter went to his friend's house in the Bronx, even though this was not the stated reason for his pass to leave the RRC. The following week, Porter arrived a half-hour late to his sex-offender treatment

appointment, which he admits, but states that he called to inform his therapist of the delay and that he was late due to a work orientation program.  On October 10, 2007, Porter left the RRC without a pass, which Porter admits, but states that he had to go to a job site and was not provided the pass that he requested. On October 11, 2007, he failed to report for a random urine analysis without explanation.  On October 12, 2007, he failed to return to the RRC immediately after his appointment with the Probation Department as directed.  On October 13, 2007, he left the RRC without a pass and did not return that evening.  Porter testified that he walked along Myrtle Avenue in Brooklyn, NY and stayed in a local park that night, but he was unable to recall the name or the exact location of the park.  On October 15, 2007, he left the RRC on the premise that he had to report to work, although the RRC staff later learned that he was off from work that day.

At the October 18, 2007 status conference, a hearing was scheduled for November 6, 2007 in order to decide the remaining requests for modification of supervised release.  The undersigned warned Porter that further violations of the conditions of release could lead to the revocation of supervised release and a term of imprisonment.

On October 24, 2007, the Probation Department filed a petition seeking the revocation of supervised release because of

Porter's continued failure to follow the rules of the RRC. The Probation Department filed the petition after Porter failed to comply with a RRC imposed curfew on October 19, 2007. Porter admits he returned past the RRC-imposed curfew, but states that he thought he had the Probation Department's permission to do so.

A summons was issued on October 25, 2007 and the parties were ordered to appear on October 29, 2007.

On October 26, 2007, Porter, through his counsel, submitted a list of conditions of his release to be addressed at the originally scheduled November 6, 2007 hearing. The conditions are: (1) the requirement to undergo polygraph testing in conjunction with his sex offender treatment; (2) the issue of who pays for his therapy; (3) the conditions of his access to the internet; (4) permission for unsupervised contact with one or more of his children if and when he gets custody; and (5) the constitutionality of his placement in the RRC on account on his homelessness.

That same day, Porter submitted a letter to the court renewing his request to relocate from the RRC to a friend's home, in Bronx, New York.

On October 29, 2007, the parties appeared before the undersigned at which time Porter was ordered temporarily detained pending a detention hearing. Such hearing was held before the undersigned on November 1, 2007.

**DISCUSSION**

Pursuant to Federal Rule of Criminal Procedure 32.1, a person responding to a summons for violating supervised release may be "releas[ed] or detain[ed] under 18 U.S.C. § 3143(a) pending further proceedings. The burden of establishing that the person will not flee or pose a danger to any other person or to the community rests with the person." Fed. R. Crim. Pro. 32.1(a)(6).[2]

> 18 U.S.C. § 3143(a) states in relevant part:
>
> [T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . .

18 U.S.C. § 3143(a)(1). Although 18 U.S.C. § 3143(a) ". . .does not directly address the issue of detention pending a supervised release revocation hearing," *United States v. Edwards*, 2001 WL 175240, at *4 (N.D.N.Y. 2001), when deciding whether to detain a defendant pending a hearing for the revocation of supervised release, courts have determined "the person's eligibility for release under the standards . . . set forth in 18 U.S.C. § 3143," *U.S. v. Loya*, 23 F.3d 1529, 1531 (9th Cir. 1994), "equat[ing] the probationer's situation to that of a defendant convicted and

---

[2] Fed. R. Crim. Pro. 46(c) states that "Rule 32.1(a)(6) governs release pending a hearing on a violation of probation or supervised release." Fed. R. Crim. Pro. 46(c).

awaiting imposition of sentence." *United States v. Giannetta*, 695 F.Supp. 1254, 1256 (D.Me. 1988). *See also United States v. Mincey*, 482 F.Supp.2d 161, 163 (D.Mass. 2007); *United States v. Nogara*, 2007 WL 1031224, at *1 (N.D.Cal. 2007); *Edwards*, 2001 WL 175240, at *4 (N.D.N.Y. 2001); *and United States v. Magruder*, 2001 WL 263374, at *1 (D.D.C. 2001).

Although Fed. R. Civ. Pro. 32.1 and 18 U.S.C. § 1343 do not specifically address the requirements for a detention hearing pending the revocation of supervised release, in such a situation a detention hearing should be conducted within the time frames set forth by 18 U.S.C. § 1342(f).[3] *See Edwards,* 2001 WL 175240, at *4; *U.S. v. Fernandez,* 144 F.Supp.2d 115, 119 (N.D.N.Y. 2001).

In this case, Porter represents a danger to the community. Porter has repeatedly failed to comply with RRC-imposed curfews and rules, and refuses to account for his whereabouts or co-operate with the Probation Department as required by the terms of

---

[3] 18 U.S.C. § 1342(f) provides in relevant part:

> The judicial officer shall hold a hearing to determine whether any condition or combination of conditions ... will reasonably assure the appearance of such person as required and the safety of any other person and community... The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of such person may not exceed five days (not including any intermediary Saturday, Sunday, or legal holiday), and a continuance on motion of the attorney for the Government may not exceed three days (not including any intermediary Saturday, Sunday, or legal holiday). During a continuance, such a person shall be detained...

18 U.S.C. § 1342(f).

his release.  Rather than seek help for his problems, Porter has repeatedly chosen to take matters into his own hands, defying any orders with which he does not agree.  His underlying sex offender conviction for the possession and transportation of child pornography and his violations of the conditions of pre-sentencing release also contribute to my conclusion that Porter represents a danger to the community.  Porter's actions have established his inability to abide by any court-imposed conditions and as a result I find that there are no conditions or combination of conditions that would insure against the above risk.  Therefore, in the absence of clear and convincing evidence that Porter is not likely to pose a danger to the community, I find that detention pending the revocation hearing is appropriate.

Accordingly, it is ordered that Porter be, and hereby is, detained pending the revocation of supervised release hearing.

## CONCLUSION

For the reasons set forth above, it is ordered that Howard Porter be, and hereby is, detained pending the revocation of supervised release hearing. The clerk is directed to transmit a copy of the within to the parties and to the magistrate judge.

SO ORDERED.

Dated :   Brooklyn, New York
          November 1, 2007


                    By:  /s/ Charles P. Sifton (electronically signed)
                                United States District Judge