UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X

United States of America,                        03-CR-0129
                                Plaintiff,       (CPS)

        - against -

Howard Thomas Porter,                            MEMORANDUM
                                                 OPINION & ORDER

                                Defendant.

-------------------------------------------X
SIFTON, Senior Judge.

        On October 16, 2003, Howard Thomas Porter ("Porter") was
convicted by a jury on three counts of transporting and shipping
child pornography in interstate commerce by computer, in
violation of 18 U.S.C. § 2252A(a)(1) and seven counts of
possession of child pornography, in violation of 18 U.S.C. §
2252A(a)(5)(B).  On May 26, 2004, Porter was sentenced by the
undersigned to 4 years imprisonment on each count to be served
concurrently and 3 years supervised release on each count to be
served concurrently.  On November 1, 2006, following a Second
Circuit appeal and remand, Porter was sentenced to the same
period of imprisonment and supervised release.  On August 31,
2007, Porter began his period of supervised release.  On November
13, 2007, Porter was found to have violated a condition of
supervised release. Presently before this court is Porter's
sentencing for the violation of supervised release.

        For the reasons set forth below, Porter's term of supervised
release is revoked.  Porter is sentenced to 4 months imprisonment

and a new term of 32 months supervised release with several special conditions that are set forth below.

## BACKGROUND

The following facts are drawn from the parties' submissions in connection with the November 8, 2007 violation proceeding and from the record of prior proceedings before the undersigned.

Between October 7, 2002 and December 2002, an undercover detective from the Wichita, Kansas Police Department, posing as the mother of a four-year-old daughter in Wichita, entered a chat room believed to be frequented by individuals interested in exchanging child pornography or engaging in sexual activities with children. Porter made initial contact with the detective, and several chat sessions ensued in which Porter discussed the possibility of engaging in sexual activity with the four-year-old daughter. Porter also sent the detective e-mail messages with attached images of child pornography. Law enforcement officers obtained a warrant to arrest Porter and search his home, which was executed on January 9, 2003. Among the evidence seized were computer materials containing images of child pornography and ten photographs of children, including Porter's son.

Porter was arraigned on January 9, 2003, and signed an unsecured bond in the amount of $150,000 in which he agreed to the conditions of pretrial release set by Magistrate Judge Azrack. These conditions included restriction of travel to New

Jersey and New York City, surrender of his passport, weekly in-person reports to and random visits by the Pretrial Services Agency, evaluation and treatment for possible mental health problems, forbearance from unsupervised contact with children, and a ban on all Internet use.  On January 28, 2003, Magistrate Judge Mann imposed the additional conditions of drug and alcohol testing and treatment as well as the immediate cessation of employment or volunteer work for the National Coalition for Civil Rights.

On January 30, 2003, Porter was indicted on three counts of transporting child pornography through interstate commerce.  The indictment was superseded by a fourteen count indictment on April 23, 2003, charging Porter with three counts of transporting and shipping child pornography in interstate commerce by computer in violation of 18 U.S.C. §§ 2252A(a)(1), 2252A(b)(1), and 3551 *et seq.*, and eleven counts of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 3551 *et seq.*

In accordance with the conditions of his pretrial release, Porter was evaluated at the New York Center for Neuropsychology and Forensic Behavioral Science.  The evaluation revealed that

> defendant's primary sexual interest is in adolescent females...he endorsed items which reflect justification for pedophilic behavior, the types of rationalization and/or excuses used frequently by individuals who are sexually involved with children...he attempts to present himself in a socially desirable light...Mr.

> Porter is either unwilling to openly discuss his
> offending behavior, and/or, lacks substantial insight
> into the nature of the same.

Mem. from Melissa A. Roman, United States Pretrial Services Officer, Apr. 3, 2003, at 1-2 (internal quotation marks omitted). The treating facility determined that Porter was "in need of individual therapy to: monitor his mental status over time; and, to confront his distorted thinking, and gain insight into his offending behavior." *Id.* at 1. Porter refused to participate in treatment. While on pretrial release, Porter also failed to attend a pretrial services appointment, report a change in employment, and be present for a scheduled home visit.

Trial by jury commenced on October 7, 2003, and, on the government's motion, one count of possession of child pornography was dismissed. On October 16, 2003, the jury acquitted Porter on three counts of possession, found Porter guilty on the remaining seven counts of possession, and found Porter guilty on all three counts of transportation. Porter remained on conditional release following the verdict.

At the time of Porter's sentencing, Porter's criminal history was described as consisting of several arrests; a conviction in 1987 for battery of a Florida law enforcement officer and disorderly conduct resulting in a sentence of three years of probation; 1993 guilty plea of disorderly conduct in Putnam Valley, New York after being arrested for criminal

contempt; and a Staten Island arrest and arraignment for driving while intoxicated, which occurred during Porter's conditional release pending sentencing.  In addition, Porter's son was removed from his custody by the New York City Administration for Children's Services on neglect charges in 2003, with custody eventually being transferred to his son's great-aunt who resides in New Jersey.  Porter also presented a history of alcohol abuse.

On March 10, 2004, the government moved for Porter's remand, which the Court granted based on Porter's violation of the conditions of his pre-sentencing release.  Specifically, Porter was twice seen at a public library by Administration for Children's Services workers, each time on Internet chatrooms, in direct violation of the terms of his release, which stated that he was not to use the Internet, and he failed to report the aforementioned driving while intoxicated arrest as required.

At his sentencing on May 15, 2004, Porter moved for bail pending appeal. The court denied the motion finding Porter to be a danger to the community.  On July 20, 2005, Porter again moved for release pending appeal.  The motion was denied on September 15, 2005.

Porter appealed his conviction and sentence to the Second Circuit.  On June 5, 2006, the Second Circuit affirmed the conviction but remanded to the undersigned for sentencing, pursuant to *United States v. Fagans*, 406 F.3d 138 (2d Cir. 2005).

*United States v. Porter*, 184 Fed. Appx. 112, 115 (2d Cir. 2005), *aff'd* by, 127 S.Ct. 2149 (2007).   In June 2006, Porter moved for release pending resentencing which the court denied in October 2006.   On November 1, 2006, Porter was resentenced to 4 years imprisonment and 3 years supervised release.   The following special conditions of supervised release were imposed in addition to the District's standard conditions of release:[1] (1) follow the directions of the Probation Department with respect to psychiatric and (2) substance abuse treatment; (3) not use any computer or Internet connection for the purposes of gaining access to child pornography; and (4) submit to monitoring, directly or electronically, of any personal computer, in order to assure compliance with condition (3).

Porter appealed the November 1, 2006 sentence to the Second Circuit.   On February 22, 2007, Porter filed a motion for bail pending appeal.   On April 5, 2007, Porter's motion was denied. On July 20, 2007, the Second Circuit affirmed the sentence. *U.S. v. Porter*, 2007 WL 2090147 (2d Cir. 2007).

On August 16, 2007, Porter filed a *pro se* motion for injunctive and declaratory relief from the requirements of the Sex Offender Notification and Registration Act ("SORNA"), 42 U.S.C. § 16901, *et seq.*, and modification of supervised release.

---

[1] The standard conditions of supervised release include: (1) restrictions on travel; (2) mandatory reports to the probation officer; (3) compliance with probation officer instructions; (4) support to dependents; (5) regular work at a lawful occupation; (6) informing the probation officer of changes in residence or employment; and (7) alcohol and drug restrictions.

Specifically, Porter sought (1) to enjoin his registration under SORNA claiming that the statute violates the *ex post facto* clause of the Constitution; (2) access to Richmond and Kings County because of pending legal actions, as well as the state of New Jersey where his son resides; and (3) suspension of mandatory drug testing.

On August 31, 2007, Porter began his three year sentence of supervised release.

Porter stayed with his parents at their home in Staten Island, New York for the first four nights after his release. Porter then spent one night in a homeless shelter and informed the Probation Department where he was staying. Porter maintains that the shelter would have let him stay there for two weeks and would have then moved him into temporary housing. According to the Probation Department, Porter could not stay at that particular homeless shelter because a day care center was located nearby.

On September 5, 2007, Porter made an emergency motion for modification of supervised release seeking relocation to a friend's house in Bronx, New York. In his motion, Porter informed the Court that the Probation Department of the Southern District of New York ("Southern District") had rejected his request to move to this friend's house in Bronx, New York. According to the Probation Department, Porter was allowed to stay in this friend's house during its investigation of the apartment

as a potential permanent residence for Porter and while the
Southern District considered whether it would accept supervision
of Porter.  The Southern District eventually declined to accept
supervision of Porter.

On September 7, 2007, the Probation Department moved for a
modification of the conditions of Porter's supervised release as
follows:

> For a period of 180 days, the defendant shall reside in a
> Residential Re-Entry Center (RRC) approved by the Probation
> Department.  While in the RRC, the defendant shall adhere to
> all rules and conditions established by the RRC, including
> the payments of subsistence costs.  If the defendant
> establishes a stable residence that is approved by the
> Probation Department during this 180 day period, the
> defendant is to be released from the RRC and this condition
> shall be considered satisfied.

The above modification was ordered by the undersigned on
September 17, 2007, after Porter submitted a written waiver of
his right to a hearing and the assistance of counsel.

On September 28, 2007, the Probation Department requested a
hearing on the condition that Porter participate in a mental
health treatment program, contribute to the cost of such services
or any psychotropic medications prescribed, and undergo a
polygraph examination as part of the treatment. The Probation
Department also moved for a modification of the conditions of
Porter's supervised release to include computer and Internet
monitoring and the requirement of random searches, which was
ordered by the undersigned on October 1, 2007, after Porter's
waiver of his right to a hearing and the assistance of counsel.

Porter entered the RRC on October 2, 2007. That same day, Porter submitted a renewed application for permission to relocate to the same friend's home, in Bronx, New York.  On October 4, 2007, the undersigned denied Porter's application and ordered the defendant, the Probation Department, the government, and assigned counsel to appear before the undersigned on October 18, 2007 for a status conference to address the outstanding modifications of release sought by Porter and the Probation Department.

On October 17, 2007, the Probation Department submitted a memorandum to the Court outlining Porter's non-compliance with the RRC's rules and Probation Department's directives.  The memorandum requested that the court impose an additional modification of supervised release requiring Porter to reside at the RRC for 180 days as a sanction for Porter's failure to comply with the RRC rules and the Probation Department's directives. Porter did not consent to this requested modification.

At the October 18, 2007 status conference, a hearing was scheduled for November 6, 2007 in order to decide the outstanding requests for modification of supervised release.  The undersigned warned Porter that further violations of the conditions of release could lead to the revocation of supervised release and a term of imprisonment.

On October 24, 2007, the government filed a petition seeking the revocation of supervised release because of Porter's continued failure to follow the rules of the RRC.

A summons was issued on October 25, 2007 and the parties were ordered to appear on October 29, 2007.

On October 26, 2007, Porter, through his counsel, submitted a list of conditions of his release to be addressed at the originally scheduled November 6, 2007 hearing.  The conditions included: (1) the requirement to undergo polygraph testing in connection with his sex offender treatment; (2) the issue of payment for treatment; (3) the conditions of Porter's access to the Internet; and (4) permission for unsupervised contact with one or more of Porter's children if and when he were to get custody.

That same day, Porter submitted a letter to the court renewing his request to relocate from the RRC to the same friend's home, in Bronx, New York.

On October 29, 2007, the parties appeared before the undersigned at which time Porter was ordered temporarily detained pending a detention hearing.  Such hearing was held before the undersigned on November 1, 2007, at which time Porter was ordered detained pending the outcome of the violation of supervised release hearing.

On November 8, 2007, a violation of supervised release hearing was held before the undersigned.  On November 13, 2007, the undersigned issued a Memorandum Opinion and Order, finding that Porter had violated a condition of supervised release.

The Probation Department has recommended that Porter's

supervised release be revoked and that he be sentenced to 4
months imprisonment, to be followed by 32 months supervised
release, with the following special conditions: (1) participating
in a mental health program, which includes undergoing a polygraph
examination(s) to obtain information necessary for risk
management and correctional treatment and contributing to the
costs of treatment; (2) refraining from the use of electronic
devices to access and view pornography of any kind or
communication via a computer with any individual or group who or
which promotes the sexual abuse of children, and cooperating with
the Probation Department's computer and Internet monitoring
program;  (3) submitting his person or any premises under his
control to a search if there is reasonable belief that contraband
or evidence of a violation of the conditions of release may be
found; (4) notifying his employer of his computer related offense
if his job requires computer access with Internet capability; and
(5) refraining from association with any children under the age
of 18, unless a responsible adult is present and he has prior
approval from the Probation Department.  U.S. Probation
Department, Report of Violation of Supervised Release, dated
October 22, 2007.

On December 12, 2007, defendant appeared before the
undersigned for sentencing.  At that time, the parties were
informed of the Court's *sua sponte* consideration of monitoring
Porter's movements while on supervised release through a Global

Positioning Satellite (GPS) system and by undercover
surveillance. The sentencing was adjourned to January 3, 2008,
so that the parties could submit any written objections to the
*sua sponte* proposed condition. The government did not submit any
objections to the proposed condition. In a letter dated December
27, 2007, Porter, through counsel, informed the Court that he
does not object to the monitoring condition while he is in
residence at the RRC. Letter from Andrea G. Hirsch, dated
December 27, 2007.

On January 2, 2008, I denied Porter's *pro se* motion for
injunctive and declaratory relief from the SORNA registration
requirements.

## DISCUSSION

The court may revoke supervised release and impose a term of
incarceration when a defendant is found guilty of violating a
condition of supervised release. 18 U.S.C. § 3583(e)(3). Since
Porter's underlying conviction is for a class C felony, the
maximum period of incarceration authorized by statute for his
violation of supervised release is 2 years. 18 U.S.C. §
3583(e)(3). If the term of imprisonment sentenced is less than
the maximum term of imprisonment authorized by statute, a new
term of supervised release may follow. 18 U.S.C. § 3583(h). The
length of the new term of supervised release cannot exceed the
statutorily authorized term of supervised release for the
underlying offense, less any term of imprisonment that was

imposed upon revocation of supervised release. *Id.*

The United States Sentencing Commission (the "Commission") classifies defendant's violation of supervised release as a Grade C violation. U.S.S.G. § 7B1.1(a)(3), p.s.  For Grade C violations, the Commission's policy statement recommends the revocation of supervised release or extension of the term of release and/or modification of the conditions of release. U.S.S.G. § 7B1.3(a)(2), p.s. Since a criminal history of I was found applicable at the sentencing for Porter's underlying offense, the Commission's recommended term of imprisonment is 3 to 9 months.  U.S.S.G. § 7B1.4(a), p.s.

In imposing a sentence, the court must give due consideration to the factors identified by 18 U.S.C. § 3553(a).[2]

---

[2] 18 U.S.C. § 3553(a) states:

The court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider-

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;(C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

When ordering a new term of supervised release, the court has the discretion to impose special conditions of supervised release to the extent that they are reasonably related to the 18 U.S.C. § 3553(a) factors, involve no greater deprivation of liberty than reasonably necessary for the purposes set forth in § 3553, and are consistent with the pertinent Sentencing Commission policy statements. 18 U.S.C. § 1853(d); *United States v. Johnson,* 446 F.3d 272, 277 (2d Cir. 2006).

Porter is a 40 year old convicted sex offender with a history of alcohol abuse. He has a history of disobeying court imposed restrictions, while awaiting trial, while waiting to be sentenced for his underlying offense and then again while on supervised release. Porter's violation stems from his failure to account for his whereabouts or follow the rules of the RRC where he was residing, even after warnings from the Probation Department and the undersigned. In light of his underlying sex offender conviction, Porter's continued failure to account for his whereabouts is of particular concern. Accordingly, the

---

(5) any pertinent policy statement-

  (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statements by act of Congress ....

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

seriousness of his crime, the offender's characteristics and criminal history, the need for just punishment and the promotion of respect for the law, as well as the goals of protection of the public and deterrence all support the revocation of Porter's supervised release, a prison sentence, and further supervision under the standard and special conditions that follow.

Having considered the relevant statute, the Commission's policy statements, and the § 3553(a) factors, I conclude that Porter's supervised release should be revoked and that he serve 4 months imprisonment, with credit for the time that he has been in detention in connection with the violation proceeding and sentencing as determined by the Bureau of Prisons. In addition, I impose a new term of supervised release of 32 months.

A sentence of 4 months imprisonment followed by a 32 month term of supervised release is the minimum necessary to accomplish the objectives of deterrence and protection of the public, and to ensure that Porter has an adequate opportunity to undergo rehabilitation. In addition to the District's standard conditions of release,[3] the special conditions imposed at the

---

[3] Prior to his violation, Porter sought access to Richmond and Kings counties, as well as the state of New Jersey without having to seek permission from the Court or the Probation Department. Porter's request stems from his custody proceedings in those locations. The standard conditions permit movement within the District, which includes Richmond and Kings counties. Therefore, I need not consider Porter's request for access to these two counties. However, I deny Porter's request for permission to freely move between the District and New Jersey, without prior approval. As far as the Court is aware, the custody proceeding for Porter's son is within the jurisdiction of the New York City Family Court. However, in the event that Porter may need to resort to the New Jersey courts for the custody of his son who now resides there with a great-aunt, Porter will be required to seek

time of the original sentence and the modifications not objected
to by defendant, I impose several additional special conditions
of supervised release after considering defendant's objections,
his conduct while under supervision, and the requirements of 18
U.S.C. § 3583(d).  These special conditions are discussed below.[4]

*(1) Residential Re-Entry Center*

Until Porter is able to find an appropriate residence, or
for a period of 180 days, whichever shall come first, Porter
shall reside in a Residential Re-Entry Center (RRC) approved by
the Probation Department.  While in the RRC, the defendant shall
adhere to all of the rules and conditions established by the RRC.

*(2) Mental Health Treatment*

In light of Porter's refusal to accept responsibility for
the behavior that led to his underlying conviction, it is vital
that Porter undergo mental health treatment tailored to sex

---

permission from the Court or the Probation Department in order to travel to
New Jersey.

Porter also seeks to be relieved of the mandatory drug testing
condition.  Pursuant to the Violent Crime Control and Law Enforcement Act of
1994, all offenders on supervised release for offenses committed after
September 13, 1994, are required to submit to one drug test within fifteen
days of commencement of supervised release and additional drug tests
thereafter for use of a controlled substance, unless ameliorated or suspended
by the court due to its determination that the defendant poses a low risk of
future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).
Given Porter's history of alcohol abuse, I do not find that he presents a low
risk of future substance abuse.  Accordingly, the mandatory drug testing
condition will remain in effect.

[4] As discussed in the January 2, 2008 Memorandum Opinion and Order, as a
condition of supervised release, Porter is also directed to register in
compliance with SORNA.

offenders, as identified by the Probation Department.[5]  Only by
participating in a comprehensive treatment program will the
sentencing objectives of rehabilitation, deterrence, and the
protection of the public be accomplished.

In connection with the treatment program, Porter is ordered
to undergo polygraph examinations that will serve the purpose of
gathering information necessary for treatment.  Polygraph testing
in connection with mental health treatment furthers the
sentencing goals of rehabilitation and deterrence, by
"penetrat[ing] deception and encourag[ing] an offender to
confront his own motivations and behaviors. . ." *Johnson*, 446
F.3d at 278.  Porter will be required to answer all questions
asked of him during the polygraph examination, even if they are
self-incriminating.  This requirement does not violate Porter's
Fifth Amendment privilege against self-incrimination because he
can challenge the use of any incriminating statements made during
the course of the polygraph examination in any court proceeding.
*See Johnson*, 446 F.3d at 280.

The Probation Department has requested that Porter
contribute towards the cost of his treatment either through his
own earnings or third party payment.  Pursuant to 18 U.S.C. §
3672, "[w]henever the court finds that funds are available by or

---

[5] In the past, Porter has used alleged conflicts with his efforts to
pursue other conditions as excuses for not complying with treatment
obligations.  Since treatment is of primary concern, no alleged conflict will
excuse Porter's failure to attend treatment, unless expressly approved by the
Probation Department.

on behalf of a person furnished such services . . . the court may direct that such funds be paid . .. [and] used to reimburse the appropriations obligated and disbursed in payment for such services . . ." 18 U.S.C. § 3672. Given Porter's current state of unemployment and homelessness, it is premature to burden him with any personal financial obligations in connection with treatment. Accordingly, Porter is only required to contribute towards the cost of treatment to the extent that third party payment, under Medicaid or Medicare, is available.[6] Once Porter finds employment and housing, the Probation Department may renew its request for Porter's contribution towards the cost of treatment through his own earnings.

*(3) Monitoring of Computer and Internet Use*

The defendant objects to the special condition limiting him to one personal Internet capable device as he had earlier agreed to while under supervision.

The purpose of restricting and monitoring Porter's Internet usage while under supervision is to ensure that he not access pornography. Limiting Porter to one personal Internet capable device and requiring his participation in the Probation

---

[6] Porter argues that payment for treatment represents an excessive fine, thereby violating his rights under the Eighth Amendment. "A payment to the government is only a 'fine' if it constitutes 'punishment for some offense.'" *Baker v. Gonzalez,* 2007 WL 141050, *4 (E.D.Ky. 2007) (citing *United States v. Bajakajian*, 524 U.S. 321, 327 (1998)). Here, Porter's expected contribution is not punishment, but rather reimbursement for treatment received. Accordingly, Porter's required contribution conforms with the Eighth Amendment prohibition on the imposition of excessive fines.

Department's monitoring program is a reasonable means of promoting the sentencing goals of rehabilitation, deterrence, and the protection of the public, does not represent a greater deprivation of Porter's liberty than necessary, and is consistent with the Commission's policy statements. *See United States v. Sofsky*, 287 F.3d 122, 126-127 (2d Cir. 2002).

However, since "Internet access ha[s] become virtually indispensable in the modern world of communication and information," *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001), until Porter has access to a personal Internet capable device, Porter is permitted to access the Internet at various branches of the New York Public Library and the Brooklyn Public Library provided he give at least 24 hour prior notice to his probation officer.[7] Under the Children's Internet Protection Act ("CIPA"), the New York Public Library and the Brooklyn Public Library have implemented software filtering on all of their Internet-accessible computers that protects against visual depictions of obscenity and child pornography. http://www.nypl.org/pr/pubuse.cfm (last visited on January 2, 2008); http://www.brooklynpubliclibrary.org/legal/internet.jsp (last visited on January 2, 2008). Although the software results in a degree of "underblocking," *id.,* accessing the Internet at a

---

[7] This condition combined with the Probation Department's authority to conduct undercover surveillance should suffice to deter inappropriate use of the public library computers.

public library still provides a controlled environment in which Porter will be least likely to access pornography. Porter is ordered not to disable the Internet filters when using the public library computers.[8] Disabling the filters on the public library computers will be treated as a violation of this condition.

If and when Porter acquires an Internet capable device, he will no longer be permitted to access the Internet at the library and must inform the Probation Department of his acquisition so that the required monitoring software/hardware can be installed.

In addition, should Porter find a job that requires Internet access, Porter will be permitted to access the Internet at his job site for work purposes only, provided that the computer he uses has the appropriate Internet filtering software. Porter will also be required to inform the Probation Department of his required Internet use at his job site.

*(4) Unsupervised Association with Children Under the Age of 18*[9]

---

[8] The New York Public Library permits users 17 years of age or older to "disable the filtering software in order to obtain unfiltered Internet access for bona fide research or other lawful purposes." http://www.nypl.org/pr/pubuse.cfm (last visited on January 2, 2008). The Brooklyn Public Library permits users 17 years of age or older to disable the filtering software, while prohibiting the use of " [l]ibrary computers to access material that is legally defined as obscenity, child pornography, or, in the case of minors, harmful to minors." http://www.brooklynpubliclibrary.org/legal/internet.jsp (last visited on January 2, 2008).

[9] As the parties have noted, Porter's question of how the restriction on his association with children implicates his access to his own children is not ripe for review because he does currently have custody or visitation rights with respect to his children. Should Porter gain custody or visitation rights in the future, I will consider a modification to the condition in order to ensure that Porter's liberty interest in raising his children is not compromised. *See United States v. Myers*, 426 F.3d 117, 123 (2d Cir. 2005).

Porter will be prohibited from associating with children under the age of 18, unless a responsible adult is present and he has prior approval from the Probation Department. This is a reasonable condition given his underlying offense, promotes the protection of the public, does not represent a greater deprivation of liberty than necessary, and is consistent with the Commission's policy statements.

*(5) Monitoring and Surveillance of Porter's Movements*

In light of Porter's continued failure to account for his whereabouts while on supervised release, the Court will impose a condition that Porter's movements be monitored through a Global Positioning Satellite (GPS) system and by undercover surveillance throughout his term of supervised release. Under this special condition, Porter is required to wear a GPS device and will be subjected to reasonable, random undercover surveillance by the Probation Department or the United States Marshal Service in order to ensure his compliance with the other conditions of release. The surveillance and GPS monitoring of Porter's movements while on supervised release are reasonable means by which to accomplish the sentencing objectives of deterrence and protection of the public, do not represent a greater deprivation of Porter's liberty than necessary, and are consistent with the Commission's policy statements. The requirement for such monitoring will need to continue even after Porter establishes his own residence.

## CONCLUSION

For the reasons set forth above, Porter's supervised release is revoked, and he is sentenced to 4 months imprisonment, with credit for his time in detention pending the violation proceeding and sentencing as determined by the Bureau of Prisons. Upon his release, Porter will serve a term of 32 months supervised release, with the standard and special conditions specified above. Failure to adhere to any condition of release may result in revocation and imprisonment for up to two years without credit for any time previously served on his sentence. The Clerk is directed to transmit a filed copy of the within to the parties and the magistrate judge.

SO ORDERED.

Dated : Brooklyn, New York
        January 3, 2008


                    By:   /s/ Charles P. Sifton (electronically signed)
                          United States District Judge