UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X

United States of America,

                           Plaintiff,            03-CR-0129
                                                 (CPS)

        - against -

Howard Thomas Porter,                            MEMORANDUM
                                                 OPINION & ORDER

                           Defendant.

-------------------------------------------X

SIFTON, Senior Judge.

        On October 16, 2003, Howard Thomas Porter ("Mr. Porter") was
convicted by a jury on three counts of transporting and shipping
child pornography by computer in interstate commerce, in
violation of 18 U.S.C. § 2252A(a)(1) and seven counts of
possession of child pornography, in violation of 18 U.S.C. §
2252A(a)(5)(B).  On May 26, 2004, Mr. Porter was sentenced by the
undersigned to 4 years imprisonment on each count to be served
concurrently and 3 years supervised release on each count to be
served concurrently.  On November 1, 2006, following a Second
Circuit appeal and remand, Mr. Porter was again sentenced to the
same period of imprisonment and supervised release.  On August
31, 2007, Mr. Porter began his period of supervised release.
Thereafter, on October 24, 2007, the Probation Department filed a
petition charging Mr. Porter with a violation of supervised
release, and on October 29, 2007, I ordered that Mr. Porter be
detained pending a hearing on the charges.  Following the

hearing, on November 13, 2007, I found that Mr. Porter had violated a condition of supervised release, and on January 3, 2008, I revoked and set aside Mr. Porter's supervised release and sentenced Mr. Porter to a 4-month term of imprisonment, with credit for his time in detention, to be followed by a new, 32-month term of supervised release. Mr. Porter appealed this decision on January 8, 2003, and his conviction was affirmed with the mandate issued on August 29, 2008.

Presently pending before this Court is an accusation that Mr. Porter has again violated the conditions of his supervised release requiring him (1) to attend a sex offender treatment program approved by the Probation Department and (2) to refrain from new criminal conduct. A hearing on the alleged violations occurred before the undersigned on December 1, 2008. For the reasons and upon the findings of fact and conclusions of law set forth below, I conclude that Mr. Porter has violated a condition of his supervised release.

## BACKGROUND

The following facts are drawn from the undisputed allegations in the parties' submissions in connection with this proceeding, from the December 1, 2008 hearing, and from the record of prior proceedings before the undersigned.

Between October 7, 2002 and December 2002, an undercover detective from the Wichita, Kansas Police Department, posing as

the mother of a four-year-old daughter in Wichita, entered a chat room believed to be frequented by individuals interested in exchanging child pornography or engaging in sexual activities with children. Mr. Porter initiated contact with the detective, and several chat sessions ensued in which Mr. Porter discussed the possibility of engaging in sexual activity with the four-year-old daughter. Mr. Porter also sent the detective e-mail messages with attached images of child pornography. Law enforcement officers obtained a warrant to arrest Mr. Porter and search his home, which was executed on January 9, 2003. Among the evidence seized in the home were computer materials containing images of child pornography and ten photographs of children, including Mr. Porter's minor son.

Mr. Porter was arraigned on January 9, 2003, and signed an unsecured bond in the amount of $150,000 in which he agreed to conditions of pretrial release set by Magistrate Judge Azrack. These conditions included restriction of travel to New Jersey and New York City, surrender of his passport, weekly in-person reports to and random visits by the Pretrial Services Agency, evaluation and treatment for mental health problems, forbearance from unsupervised contact with children, and a ban on Internet use. On January 28, 2003, Magistrate Judge Mann imposed additional conditions of drug and alcohol testing and treatment as well as cessation of employment or volunteer work with the

National Coalition for Civil Rights.

On January 30, 2003, Mr. Porter was indicted on three counts of transporting child pornography in interstate commerce. The indictment was superseded by a fourteen-count indictment on April 23, 2003, charging Mr. Porter with three counts of transporting and shipping child pornography by computer in interstate commerce in violation of 18 U.S.C. §§ 2252A(a)(1), 2252A(b)(1), and 3551 et seq., and eleven counts of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 3551 et seq.

In accordance with the conditions of his pretrial release, Mr. Porter was evaluated at the New York Center for Neuropsychology and Forensic Behavioral Science. The evaluation concluded that

> defendant's primary sexual interest is in adolescent females . . . he endorsed items which reflect justification for pedophilic behavior, the types of rationalization and/or excuses used frequently by individuals who are sexually involved with children . . . he attempts to present himself in a socially desirable light . . . Mr. Porter is either unwilling to openly discuss his offending behavior, and/or, lacks substantial insight into the nature of the same.

Mem. From Melissa A. Roman, United States Pretrial Services Officer, Apr. 3, 2003, at 1-2 (internal quotation marks omitted).

The treating facility also determined that Mr. Porter was "in need of individual therapy to: monitor his mental status over time; and, to confront his distorted thinking, and gain

insight into his offending behavior." *Id.* at 1. Mr. Porter refused to participate in treatment. While on pretrial release, Mr. Porter also failed to attend a pretrial services appointment, report a change in employment, and be present for a scheduled home visit.

On July 9, 2003, Mr. Porter and his former wife, Annette, were divorced in Staten Island Supreme Court. They were wed on November 20, 1999, and their marriage produced one child, Andrew.

A jury trial of Mr. Porter commenced on October 7, 2003, and on the government's motion, one count of possession of child pornography was dismissed. On October 16, 2003, the jury acquitted Mr. Porter on three counts of possession, found Mr. Porter guilty on the remaining seven counts of possession, and found Mr. Porter guilty on all three counts of transportation. Mr. Porter remained on conditional release following the verdict and pending sentencing.

At the time of Mr. Porter's sentencing, Mr. Porter's criminal history included a conviction in 1987 for battery of a Florida law enforcement officer and disorderly conduct resulting in a sentence of three years of probation; a conviction in 1993 for disorderly conduct in Putnam Valley, New York, in connection with an arrest for criminal contempt; and driving while intoxicated, which occurred pending sentencing on the jury's verdict.

Also in 2003, Mr. Porter's son was removed from his custody by the Administration for Children's Services on neglect charges, with custody eventually transferred to his son's great-aunt.

In December 2003, a permanent injunction was issued by the Volusia County Court of Florida barring Mr. Porter from contacting his former wife and their child, Andrew.

On March 10, 2004, the government moved for Mr. Porter's remand, which the Court granted based on Mr. Porter's violation of the following conditions of his release: Mr. Porter (1) was twice seen by Administration for Children's Services workers at a public library, each time on internet chatrooms; and (2) failed to report a driving while intoxicated arrest as required.

Following his sentencing on May 15, 2004, Mr. Porter moved for bail pending appeal. I denied the motion, finding Mr. Porter to be a danger to the community. On July 20, 2005, Mr. Porter again moved for release pending appeal, claiming that he had demonstrated a substantial likelihood of reversal on the seven possession counts, which would reduce his sentence, and that he was not a danger to the community or a flight risk. The motion was denied on September 15, 2005.

Mr. Porter appealed his conviction and sentence to the Second Circuit. On June 5, 2006, the Second Circuit affirmed the conviction but remanded to the undersigned for re-sentencing, under *United States v. Fagans*, 406 F.3d 138 (2d Cir. 2005). *U.S.*

*v. Porter*, 184 Fed. Appx. 112, 115 (2d Cir. 2005). In June 2006, Mr. Porter moved for release pending re-sentencing which the court denied in October 2006. On November 1, 2006, Mr. Porter was resentenced to 4 years imprisonment and 3 years supervised release. Mr. Porter appealed the November 1, 2006 sentence to the Second Circuit.

On February 22, 2007, Mr. Porter filed a new motion for bail pending appeal. On April 5, 2007, Mr. Porter's motion was denied, because (1) Mr. Porter had not demonstrated a likelihood of success on appeal or a substantial issue of law or fact likely to result in a reduced sentence to less than the time he would have served when the appeals process was likely to be completed; and (2) Mr. Porter had not demonstrated that the danger which he presented to the community would be significantly reduced or eliminated in the time left on his sentence by medical or correctional treatment outside the prison system.

Mr. Porter thereafter filed a Writ of Certiorari to the United States Supreme Court, which was denied on April 30, 2007. *Porter v. U.S.*, 127 S.Ct. 2149 (2007). On July 20, 2007, the Second Circuit affirmed the sentence. *U.S. v. Porter*, 2007 WL 2090147 (2d Cir. 2007).

On July 30, 2007 Mr. Porter filed a *pro se* motion to vacate judgment pursuant to Federal Rule of Civil Procedure 60(b)(6) based on the court's rulings with respect to discovery issues

before his October 2003 trial. I denied this motion in a Memorandum and Opinion dated November 13, 2007.

On August 16, 2007, Mr. Porter filed a *pro se* motion for injunctive and declaratory relief from the requirements of the Sex Offender Registration and Notification Act ("SORNA") and modification of supervised release. Specifically, Mr. Porter sought (1) to enjoin his registration under SORNA claiming that the statute violated the ex post facto clause of the Constitution; (2) access to Richmond and Kings County because of pending legal actions, as well as the state of New Jersey where his son resides; and (3) suspension of mandatory drug testing. I denied this application on January 2, 2008.

On August 31, 2007, Mr. Porter was released from prison and began his three-year sentence of supervised release. The following special conditions of supervised release were imposed in addition to the Eastern District's standard conditions of release:[1] Mr. Porter was required to (1) follow the directions of the Probation Department with respect to psychiatric and substance abuse treatment; (2) not use any computer or Internet connection for the purpose of gaining access to child pornography; and (3) submit to monitoring, directly or

---

[1] The standard conditions of supervised release include: (1) restrictions on travel; (2) mandatory reports to the probation officer; (3) compliance with probation officer instructions; (4) support to dependents; (5) regular work at a lawful occupation; (6) informing the probation officer of changes in residence or employment; and (7) alcohol and drug restrictions.

electronically, of any personal computer, in order to assure compliance with condition (2).

On September 7, 2007, following Mr. Porter's unsuccessful search for a primary residence, the Probation Department moved for a modification of the conditions of Mr. Porter's supervised release as follows:

> For a period of 180 days, the defendant shall reside in a Residential Re-Entry Center (RRC) approved by the Probation Department. While in the RRC, the defendant shall adhere to all rules and conditions established by the RRC, including the payments of subsistence costs. If the defendant establishes a stable residence that is approved by the Probation Department during this 180 day period, the defendant is to be released from the RRC and this condition shall be considered satisfied.

The above modification was ordered by the undersigned on September 17, 2007, after Mr. Porter submitted a written waiver of his right to a hearing.

On September 28, 2007, the Probation Department requested a modification of the conditions of supervision to require that Mr. Porter participate in a mental health treatment program, contribute to the cost of such services or any psychotropic medications prescribed, and undergo a polygraph examination as part of the treatment, all of which Mr. Porter opposed. The Probation Department also moved for a modification of the conditions of Mr. Porter's supervised release to include computer and Internet monitoring and the requirement of random searches, which was ordered by the undersigned on October 1, 2007, after

Mr. Porter's waiver of his right to a hearing.

Mr. Porter entered the Brooklyn Community Corrections Center ("BCCC"), the RRC designated by the Probation Department, on October 2, 2007.

On October 24, 2007, the Probation Department filed a petition charging Mr. Porter with a violation of supervised release for his failure to follow the rules of the RRC, including failure to report for sex offender treatment, using passes to leave the RRC for purposes other than those stated to obtain the pass to leave, and leaving the RRC without a pass.

On October 29, 2007, Mr. Porter was ordered temporarily detained pending a hearing on the violation proceeding.

On November 8, 2007, a violation of supervised release hearing was held before the undersigned. On November 13, 2007, the undersigned issued a Memorandum Opinion and Order, finding that Mr. Porter had violated a condition of his supervised release.

On December 12, 2007, Mr. Porter appeared before the undersigned for sentencing on the violation. At that time, the parties were informed of the Court's *sua sponte* consideration of monitoring Mr. Porter's movements while on supervised release through a Global Positioning Satellite (GPS) system and by undercover surveillance. The sentencing was adjourned to January 3, 2008, so that the parties could submit any written objections

to the *sua sponte* proposed condition. In a letter dated December 27, 2007, Mr. Porter, through counsel, informed the Court that he did not object to the monitoring condition while he was in residence at the RRC.

On January 3, 2008, I sentenced Mr. Porter to 4 months imprisonment, with credit for the time that he had been in detention in connection with the violation proceeding and sentencing, as well as a new term of supervised release of 32 months. In addition to the District's standard conditions of release and the special conditions imposed at the time of the original sentence, I imposed several additional special conditions of supervised release: (1) that Mr. Porter should reside in an RRC approved by the Probation Department until he found an appropriate residence, or for a period of 180 days, whichever should come first; (2) that Mr. Porter undergo sex offender treatment approved by the Probation Department and submit to polygraph examinations in connection with that treatment; (3) that Mr. Porter be limited to possession of one personal Internet-capable device subject to the Probation Department's monitoring program, but that until Mr. Porter had access to a personal Internet capable device, he should be permitted access to the Internet at various branches of the New York Public Library and the Brooklyn Public Library; (4) that Mr. Porter be prohibited from associating with children under the age

of 18, unless a responsible adult was present and he had prior approval from the Probation Department; and (5) that Mr. Porter's movements be monitored through a GPS system and by undercover surveillance throughout his term of supervised release.

On January 8, 2008, Mr. Porter appealed the Memorandum Opinion and Order entered on January 3, 2008. The appeal was denied in a mandate dated August 29, 2008.

On February 26, 2008, Mr. Porter began his new 32-month term of supervised release.

On March 20, 2008, Mr. Porter filed a motion to modify, or stay pending appeal, the condition of his release requiring the monitoring of his movements through a GPS device. In a Memorandum Opinion and Order dated April 10, 2008, I denied this motion.

On September 10, 2008, the Probation Department charged Mr. Porter with violating the conditions of supervised release by (1) failing to participate in a sex offender treatment program, and (2) engaging in new criminal conduct. Probation Department Report of Violation of Supervised Release dated September 9, 2008 ("Charging Report").

On December 1, 2008, a violation of supervised release hearing was held before the undersigned, at which defendant and two government witnesses, Karen Long of the New York Center for Neuropsychology & Forensic Behavioral Science and Erin Weinrauch

of the United States Probation Department, testified.

The government submitted evidence in the form of a discharge summary from the sex offender treatment program approved by the Probation Department, which showed that Mr. Porter was discharged from treatment because his engagement in the program was "unsatisfactory." *See* Charging Report, Ex. 1 ("Client Discharge From Treatment Summary" from the New York Center for Neuropsychology & Forensic Behavioral Science). Specifically, the summary shows that Mr. Porter minimized the severity of his offense during treatment, refused to explore his motivation for and thinking errors related to his offense, was dismissive when given feedback and often became sarcastic and defensive. The summary shows that over the course of treatment, Mr. Porter was repeatedly confronted about his failure to participate in a meaningful manner by both his therapist and his probation officer, but that Mr. Porter appeared to ignore this feedback and frequently stated that he believed he was participating appropriately just by attending the treatment sessions. The discharge summary notes that "while Mr. Porter is in need of sex offender treatment, he is treatment resistant at this time." Previous reports submitted by the Probation Department also allege that Mr. Porter has failed to complete homework assigned during treatment and has minimized the importance of such assignments.

Ms. Long, Mr. Porter's therapist at the New York Center for Neuropsychology and Forensic Behavioral Science, testified concerning Mr. Porter's participation in the sex offender treatment program. Ms. Long testified that while it was common for patients to be resistant to treatment initially, it was uncommon for patients to remain treatment-resistant for six months, as she concluded Mr. Porter had. Transcript of December 1, 2008 Hearing ("Tr.") at 14. In Ms. Long's opinion, Mr. Porter failed to reach either of the two basic goals of sex offender therapy: accepting responsibility for the offending behavior and gaining insight and understanding into the factors that brought about the offending behavior. *Id.* at 11. Concerning her individual sessions with Mr. Porter, Ms. Long testified as follows:

> Throughout individual sessions [Mr. Porter] was very resistant. When I would ask questions he would be evasive. He would often answer questions about his offending with, he would be distracted and start speaking about legal issues. He would tell me about some case law that made my questions somewhat irrelevant in his mind. He was snide, sarcastic. When I would ask him questions about his offending he would make comments such as, I told you about that already, I dealt with my offense, so we're back to that again. Overall, I think, he significantly minimized the severity of his offending and his responsibility in it. So he did not meet the basic beginning rules of treatment.

*Id.* at 11-12. Ms. Long also testified about Mr. Porter's participation in group sessions, noting that he was disruptive, made comments inquiring into other group members' legal issues, suggested that other members should challenge their lawyers, and

generally redirected the group's conversation away from Ms. Long's questions to legal matters. *Id.* at 13. Ms. Long could not recall an instance in which Mr. Porter had been helpful during the group therapy process. *Id.* Finally, Ms. Long testified that Mr. Porter had disregarded homework assignments he was given, with the explanation that they were not important to him. *Id.* at 15.

Mr. Porter testified that he thought he had participated meaningfully in sex offender treatment with Ms. Long. Specifically, he testified that he had admitted during therapy that he might have had motivations for entering chat rooms other than "doing research." *Id.* at 37-38. He also acknowledged during therapy that viewing child pornography created a demand for it. *Id.* at 41-42.

With regard to the second charge, the government submitted evidence that Mr. Porter engaged in new criminal conduct by violating the permanent injunction directing him to refrain from contacting his former wife or their child, Andrew. The permanent injunction states that Mr. Porter shall not directly or indirectly contact his former wife in person, by mail, e-mail, fax, telephone, through another person, or in any other manner. *See* Charging Report, Ex. 2 (copy of permanent injunction). On August 22, 2008, Mr. Porter's former wife advised Probation Officer Erin Weinrauch that Mr. Porter had called her father's

residence on August 21, 2008, at approximately 8:30pm, and requested to speak with his former wife. Charging Report at 11. Thereafter, on August 28, 2008, a Port Orange, Florida police officer was dispatched to the former wife's residence to obtain an incident/investigation report concerning the violation of the permanent injunction. *See* Charging Report, Ex. 3 (copy of incident/investigation report). On September 2, 2008, Probation Officer Weinrauch spoke with the former wife's father and brother, who confirmed that Mr. Porter had called their residence twice on August 21. During the first call, Mr. Porter remained silent. However, minutes later, he called a second time, identified himself as "Tom," and requested to speak to the ex-wife. The ex-wife's brother took a picture of the caller identification display on the telephone, which showed Mr. Porter's cell phone number. *See* Charging Report, Ex. 4 (copy of photo displaying Mr. Porter's cell phone number). Probation Officer Weinrauch's testimony substantially confirmed all of the above. *See* Tr. at 28-31.

Mr. Porter testified that although he lived at the address to which the government asserted the final order of protection had been mailed, he never received a copy of the final order and was unaware of its existence until the current proceedings. *Id.* at 33-34. Mr. Porter also testified that he had called his former wife's father's house because he wanted to re-establish a

relationship with his son.  *Id.* at 34, 39.

## DISCUSSION

*Supervised Release Standard*

"Supervised release is not an entitlement a defendant possesses, but rather is an act of clemency a court extends to those it finds eligible." *United States v. A-Abras, Inc.*, 185 F.3d 26, 30 (2d Cir. 1999).  District courts may impose special conditions of supervised release provided that they are 'reasonably related' to (1) the nature and circumstances of the offense and the history and characteristics of the defendant, and (2) the need for the sentence to:  reflect the gravity of the offense, promote respect for the law, and punish the defendant for the unlawful behavior; deter criminal behavior; protect the public; and provide the defendant with needed training or treatment.  *United States v. Germosen*, 139 F.3d 120, 131 (2d Cir. 1998)(citing 18 U.S.C. § 3583(d)[2]; U.S.S.G. § 5D1.3(b)).  "Conditions of supervised release may restrict liberty to the

---

[2]  18 U.S.C. § 3583(d) states in relevant part:

The court may order, as a further condition of supervised release, to the extent that such condition (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D); (2)involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a). . . any condition set forth as a discretionary condition of probation . . . and any other condition it considers to be appropriate.

18 U.S.C. § 3583(d).

extent reasonably needed to achieve the above purposes." *U.S. v. Johnson*, 446 F.3d 272, 277(2d Cir. 2006) (citing *Germosen*, 139 F.3d at 131); *see also* 18 U.S.C. § 3583(d)(2).

Although "[c]onditions of supervised release . . . [must] 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly,'" *Johnson*, 446 F.3d at 280-281 (citing *United States v. Balon*, 384 F.3d 38, 43 (2d Cir. 2004)), "conditions need not ' . . . spell out every last, self-evident detail'" *Id.* (citing *United States v. Gallo*, 20 F.3d 7, 12 (1st Cir. 1994)).

Pursuant to Federal Rule of Criminal Procedure 32.1(b)(2), a court may revoke a term of supervised release and impose a prison sentence after holding a hearing where the court finds by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C § 3583(e)(3)[3]; *see also United States v. Pelensky*, 129 F.3d 63, 68 n.8 (2d Cir.

---

[3] 18 U.S.C. § 3583 states in relevant part:

> the court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than . . . 2 years in prison if such offense is a class C . . . felony.

18 U.S.C. 3583(e)(3).

1997).

*Violation of Supervised Release Charges*

Mr. Porter faces two charges for violating two separate conditions of his supervised release: (1) that he failed to participate in a sex offender treatment program approved by the Probation Department, and (2) that he engaged in new criminal conduct. *See* Charging Report at 7, 9. At the December 1, 2008 hearing and in its post-hearing briefs, the government clarified that the second charge relates to an alleged violation of New York Penal Law 215.51(b)(iv), which provides that when, "in violation of a duly served . . . order of protection issued by a court of competent jurisdiction in . . . another state," a defendant, "with intent to harass, annoy, threaten or alarm a person for whose protection such order was issued, repeatedly makes telephone calls to such person, whether or not a conversation ensues, with no purpose of legitimate communication[,]" that defendant is guilty of criminal contempt in the first degree, a Class E felony.

*1. Failure to Participate in Sex Offender Treatment*

In a letter to the Court dated August 28, 2008, and in subsequent letters, Mr. Porter admits that he is no longer attending the sex offender treatment program approved by the Probation Department, but states that he applied for and was accepted to an alternate sex offender treatment program. This

defense is unavailing. The conditions of Mr. Porter's supervised release state that Mr. Porter was to attend a sex offender treatment program approved by the Probation Department, not a program of his own choosing. *See* Judgement dated January 3, 2008, at 4.

Mr. Porter also contends that he did not violate the conditions of his supervised release during the period when he attended treatment program sessions approved by the Probation Department because he did in fact attend those sessions. However, the Probation Department's evidence shows that Mr. Porter willfully refrained from *meaningful* participation in the sex offender treatment program. Simply attending the required sessions is insufficient in and of itself to establish compliance with the condition of his supervised release requiring him to participate in a sex offender treatment program. Mere attendance is not "participation." *See, e.g.*, *U.S. v. Red Feather,* 479 F.3d 584, 585 (8th Cir. 2007) (violation of conditions of supervised release found where defendant had been terminated from required sex offender treatment for poor attendance and lack of participation, including falling asleep during sessions and inappropriate conduct with female clients); *U.S. v. Brown*, 501 F.3d 722, 725 (6th Cir. 2007) (noting that defendant's failure "to 'participate in good faith' or do what he needed 'to do reasonably in order to be a participant and get some good out of'

the substance abuse treatment program he had been ordered to attend" resulted in violation finding); *U.S. v. Bowman*, No. 06-6559, 2008 WL 3977538, at *1-2 (6th Cir. 2008) (inappropriate behavior and intoxication during treatment sessions, as well as failure to report to some sessions, resulted in violation finding).

In her post-hearing briefs, counsel for Mr. Porter argues that the fact that Ms. Long and Mr. Porter were unable "to work successfully together" should not result in a finding that Mr. Porter violated a requirement of his supervision. Citing numerous authorities recognizing the need for individualized treatment of sex offenders, counsel for Mr. Porter argues that Ms. Long did not appropriately tailor her treatment of Mr. Porter to fit his needs. Specifically, when Mr. Porter was dismissive or evasive of Ms. Long's questions, counsel notes that with few exceptions, Ms. Long did not follow up on the reasons for Mr. Porter's evasiveness. Counsel also notes that Ms. Long did not explore Mr. Porter's anger towards her or consider whether she might herself have feelings of anger toward Mr. Porter, arguing that had Ms. Long done so, Mr. Porter's treatment might have been more fruitful.

Considered together, however, Mr. Porter's and Ms. Long's testimony on the subject of Mr. Porter's participation in the New York Forensic sex offender treatment program, together with the

documentary evidence submitted by the Probation Department,
persuade me that Mr. Porter deliberately refrained from
participating in sex offender treatment in a meaningful manner.
Apart from responding to questions evasively, Mr. Porter also
made snide and sarcastic comments during therapy, diverted other
participants' attention from Ms. Long's questions to legal
matters, was disruptive, and failed to complete assignments
because he did not consider them important.  While counsel for
Mr. Porter may be correct that Mr. Porter and Ms. Long were not a
good "fit" as therapist and patient, there is no evidence that
Mr. Porter ever complained about Ms. Long.  Having weighed the
available evidence, I find that the government has established by
a preponderance of the evidence that Mr. Porter violated the
condition of his supervised release requiring him to participate
in sex offender treatment approved by the Probation Department.

## 2. Engagement in New Criminal Conduct

With regard to the second charge, Mr. Porter argues that he
cannot be found guilty of violating the condition of his
supervised release prohibiting him from engaging in new criminal
activity by violating the permanent injunction enjoining him from
contacting his former wife, as the permanent injunction was never
served upon him.  *See* Tr. at 33-34, 44.  When a defendant raises
a challenge to the sufficiency of service of process, the
government bears the burden of proving its adequacy.  *Preston v.*

*New York*, 223 F.Supp.2d 452, 466 (S.D.N.Y. 2002); *see also Mende v. Milestone Technology, Inc.*, 269 F.Supp.2d 246, 251 (S.D.N.Y. 2003). "Conclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn [testimony] that he was never served with process." *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 658 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844, 1999 WL 265022 (2d Cir. 1999).

The Probation Department's September 9, 2008 memorandum notes that the Probation Department verified with the Volusia County Sheriff's Office that the permanent injunction was served upon Mr. Porter in December 2003. Charging Memorandum at 9. At the December 1, 2008 hearing, the government also entered into evidence a document purportedly establishing service of the permanent injunction on Mr. Porter. *See* Tr. at 31; Government Hr'g Ex. 8 (copy of purported affidavit). As counsel for Mr. Porter points out, however, the record of service relates to service effected on December 20, 2003. The permanent injunction originally submitted by the government is dated December 22, 2003, and accordingly, I conclude that the service record does not establish service of the December 22, 2003 order on Mr. Porter. However, in a subsequent post-hearing letter, the government clarified that the December 22, 2003 order is an "Amended Final Judgment of Injunction," and that after conferring with the Volusia County Court in Florida, the government

determined that a "Final Judgment of Injunction" was entered in
the Volusia County Court on December 5, 2003. *See* Letter of
Rachel J. Nash dated December 23, 2008, Ex. 1 (copy of December
5, 2003 "Final Judgment of Injunction.") The December 20, 3003
service record makes reference to an order dated December 5,
2003, and bears the same case number appearing on both the
December 5, 2003 and December 22, 2003 orders. There appears to
be no substantive difference between the December 5, 2003 "Final"
and the December 22, 2003 "Amended Final" orders. In light of
the December 5, 2003 date of the "Final" order, the December 20,
2003 date of the service record and its reference to the December
5, 2003 order, and having weighed Mr. Porter's testimony that he
never received a copy of the permanent injunction against the
government's proof of service, I find that the government has met
its burden of establishing service of the permanent injunction on
Mr. Porter.

Nevertheless, I conclude that the evidence submitted by the
government does not demonstrate the kind of repetitive conduct
addressed by New York Penal Law 215.51(b)(iv). Violation of that
statute requires that a defendant must "repeatedly make[]
telephone calls" in violation of a duly served order of
protection. N.Y.P.L. 215.51(b)(iv). Here, Mr. Porter made only
two calls within minutes of each other, during the first of which
he remained silent. Accordingly, the government has failed to

establish by a preponderance of the evidence that Mr. Porter violated the condition of his supervised release prohibiting him from engaging in any new criminal activity.

**CONCLUSION**

For the reasons set forth above, I find that defendant has violated the condition of his supervised release requiring him to submit to sex offender treatment approved by the Probation Department. Sentencing is set for January 14, 2008, at 12:00pm. The clerk is directed to transmit a copy of the within to the parties.

SO ORDERED.

Dated :   Brooklyn, New York
          December 23, 2008

                         s/Hon. Charles P. Sifton
          By:   _____
                         United States District Judge